UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                                        :
CHEN XU,                                                :
                                                        :
                                     Plaintiff,         :
                                                        :
                    -against-                           :
                                                        :
                                                        :
CITY OF NEW YORK,                                       :
                                     Defendant.         :
                                                        :
                                                        :
--------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: ___11/8/2019___

19-CV-3760 (VSB)

**OPINION & ORDER**

Appearances:

Chen Xu
New York, NY
*Pro se*

David Sumner Thayer
New York City Law Department
New York, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

        Plaintiff Chen Xu brings this action pro se against Defendant the City of New York (the

"City").  Before me are Plaintiff's motion for a preliminary injunction, (Doc. 28), and

Defendant's motion to dismiss the amended complaint, (Doc. 32).  Because I abstain from

exercising jurisdiction over Plaintiff's claims, and in the alternative find Plaintiff's allegations to

be insufficient under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), Defendant's

motion to dismiss is GRANTED, and, therefore, I do not reach a decision on Plaintiff's motion

for a preliminary injunction.

## I. **Background**[1]

Plaintiff alleges that on Friday, March 15, 2019, at 8:20 pm, two women from the

Administration for Children's Services ("ACS") came to her apartment stating that they received

a report from a doctor's office conveying that Plaintiff was insisting that her son was sick despite

the doctor's diagnoses to the contrary. (Doc. 51 ¶ 24.) Plaintiff claims she explained to the two

ACS representatives that her "son has Hydronephrosis," (*id.* at ¶ 25), and then called 911 to

come and confirm whether the two women were indeed from ACS, (*id.* at ¶ 27). Plaintiff asserts

that ACS questioned her son, and at around 11 p.m., ACS employees called an ambulance and

forced Plaintiff, her son, and her parents to a hospital emergency room. (*Id.* at ¶ 34.) Plaintiff

alleges she was forced to stay at the hospital with her son and family until 4:00 p.m. on Monday,

March 18, 2019. (*Id.* 38.)

On March 18, 2019, ACS instituted an ex parte proceeding in New York Family Court

pursuant to New York Family Court Act Section 1027, requesting a remand of Plaintiff's son to

the custody of ACS. (*See* Doc. 34, Ex. A.) ACS described for the court that, during its initial

encounter with Plaintiff on March 15, 2019, ACS employees asked for documentation of

Plaintiff's son's medical history, which Plaintiff refused to provide. (*Id.* at 10:2–21.) Plaintiff's

refusal, coupled with ACS's awareness that "[Plaintiff] ha[d] brought the child to several

medical appointments and hospitals in different states" and might be displaying symptoms of

---

[1] The facts of this case are derived from Plaintiff's submissions and from New York Family Court transcripts and orders of which the Court may take judicial notice. Plaintiff's Amended Complaint, (Doc. 18), does not set out all of the facts of this case, but Plaintiff's opposition papers included a detailed declaration, (Doc. 51 at 26), containing factual allegations which I can construe as amending Plaintiff's complaint when deciding the instant motion. *See, e.g.*, *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."); *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) ("Because Davila is proceeding *pro se*, the Court may consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint."). I assume the allegations set forth in the Amended Complaint to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

"Munchausen by proxy," led authorities to take Plaintiff and her son to New York Presbyterian Hospital where Plaintiff's son was held until Section 1027 proceedings could be instituted. (*Id.* at 5:7–21.) At the conclusion of the Section 1027 hearing, Judge Clark V. Richardson ordered that Plaintiff's son be placed in the custody of ACS and further ordered authorization for the provision of any necessary emergency medical care for the child. (*See id.* and Doc. 34, Ex. C.)

On March 25, 2019, the Family Court held an order to show cause hearing pursuant to New York Family Court Act Section 1028, which Plaintiff attended. (Doc. 34, Ex. D.) Plaintiff testified that her son suffered from a serious heart disease and had only a "30% chance to survive," necessitating attentive medical care. (*Id.* at 3:24–4:15). Judge Richardson immediately dismissed the order to show cause with leave to refile, and instructed ACS to consider what Plaintiff had said about her son's medical issues and address the health concerns accordingly. (*See id.* at 5:4–9.)

On April 12, 2019, the Family Court resumed its Section 1028 proceeding. (Doc. 34, Ex. F.) Plaintiff was present at this proceeding and presented her son's medical records to the court. (Doc. 51 ¶ 64.) After considering the evidence, Judge Richardson ruled against Plaintiff. Judge Richardson found that returning Plaintiff's son to her custody would present an "imminent risk to th[e] child's life and health," and further concluded that "[i]t [was] clear from the evidence" that the Plaintiff had "forc[ed] the child to undergo some very . . . painful procedures" despite doctors telling Plaintiff that "they [saw] nothing to be alarmed about." (*Id.* at 3:19–5:12.) Plaintiff appealed Judge Richardson's ruling to the Appellate Division of the Supreme Court, First Judicial Department, but her appeal was denied on May 23, 2019. (*See* Doc. 34, Ex. H.) In connection with the Family Court proceedings, Judge Richardson also issued two Temporary

Orders of Protection against Plaintiff, preventing her from contacting her son outside of Agency

Supervised Visitation.  (*See* Doc. 34, Ex. I, Ex. J.)

Plaintiff alleges that since April 12, 2019, ACS has improperly vaccinated her son and

failed to appropriately treat him.  (S*ee* Doc. 51 at ¶¶ 71–73, 75–76.)  She also claims that her son

"repeatedly got hurt in foster care," (Doc. 18 at 2), and that ACS threatened her and her family in

retaliation for this suit, (*id.* at 9, ¶ 1).

## II.      Procedural History

Plaintiff commenced this action by filing the complaint ("Complaint") on April 26, 2019,

seeking to recover custody of her son.  (Doc. 1.)  On the same day, Plaintiff submitted a notice of

emergency motion, seeking an order releasing her son into her custody.  (Doc. 3.)  On May 1,

2019, Plaintiff filed a second emergency notice of motion, seeking substantially the same relief.

(Doc. 6.)  On May 6, 2019, I entered an order:  (1) denying both emergency motions; (2)

dismissing the originally named Defendants, ACS New York and the Family Court of the State

of New York; and (3) construing the Complaint as alleging claims against the City and directing

the Clerk of Court to amend the caption accordingly and issue a summons as to the City.  (Doc.

11.)  On May 8, 2019, Plaintiff filed another motion for emergency relief, (Docs. 13, 14), which I

denied for the reasons detailed in my May 6, 2019 order, (Doc. 16).  Plaintiff filed an amended

complaint on May 17, 2019 ("Amended Complaint"), naming the City as the only defendant, and

alleging that the City had violated her and her son's procedural and substantive due process

rights.  (Doc. 18.)

The parties appeared for a status conference on June 14, 2019, and Plaintiff filed the

currently pending motion for a preliminary injunction on June 28, 2019, (Doc. 28), which

Defendant opposed on July 12, 2019, (Doc. 39).  Defendant filed a motion to dismiss the

Amended Complaint on July 2, 2019, (Doc. 32), supported by a memorandum of law, (Doc. 33),

and a declaration with exhibits, (Doc. 34). Plaintiff's memorandum in opposition to Defendant's

motion to dismiss and supporting declaration were received by the pro se office on July 16,

2019; however, because the filing included sensitive information, including photographs of and

medical records for Plaintiff's minor child, I ordered that the documents be sealed in part, (*see*

Docs. 44, 48), and a redacted filing was docketed on July 26, 2019, (Doc. 51). Defendant

submitted a reply memorandum in support of its motion to dismiss on August 16, 2019, (Doc.

54), and Plaintiff filed a sur-reply, without having sought leave to do so, on August 23, 2019,

(Doc. 57). Plaintiff did not submit a reply memorandum in support of her motion for a

preliminary injunction, but she did submit several additional letters requesting injunctive relief

pertaining to her minor child. (*See* Docs. 38, 50, 52, 62, 63, 67, 68.) Defendant addressed the

claims raised in these additional letters through several of its own letters. (*See* Docs. 65, 66, 69,

70.)

### III. <u>Legal Standards</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility

that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations:

the full factual picture presented by the complaint, the particular cause of action and its elements,

and the existence of alternative explanations so obvious that they render plaintiff's inferences

unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory allegations. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). In other words, "the duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).

## IV. Discussion

### A. *The Court Abstains from Exercising Jurisdiction*

The Supreme Court has recognized certain classes of cases in which the overriding obligation of federal courts to decide cases within the scope of their jurisdiction is overcome and abstention is warranted in light of "the prospect of undue interference with state proceedings." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013).  The *Younger* abstention doctrine exemplifies one such circumstance where the Court has indicated abstention is warranted. *Younger v. Harris*, 401 U.S. 37 (1971).  Although *Younger* originally held that abstention is warranted only where there is a parallel, pending state criminal proceeding, *see Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court has extended *Younger* to "particular state civil proceedings that are akin to criminal prosecutions or that implicate a State's interest in enforcing the orders and judgments of its courts," *Sprint*, 571 U.S. at 72–73.  As a result, *Younger* abstention can be applied in three "exceptional" circumstances:  "'state criminal prosecutions,' 'civil enforcement proceedings,' and 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'"  *Id.* at 73 (quoting *New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367–68 (1989)).

The Supreme Court has held that a state's "temporary removal of a child in a child-abuse context is" the type of civil proceeding in which important state interests are involved, rendering *Younger* abstention in such cases appropriate.  *Moore v. Sims*, 442 U.S. 415, 423 (1979).  The Second Circuit has similarly instructed that "federal-court abstention is required" under *Younger* when a plaintiff "seeks declaratory or injunctive relief that would interfere with a '[s]tate court's ability to perform its judicial function in . . . [an ongoing] custody proceeding[ ].'"  *Bukowski v.*

*Spinner*, 709 Fed. Appx. 87, 88 (2d Cir. 2018) (summary order) (citing *Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk Cty.*, 805 F.3d 425, 427 (2d Cir. 2015)); *see also Black v. Ranley*, 2018 WL 2766138, at *13 (S.D.N.Y. June 8, 2018) (construing *Younger* to foreclose District Court review of New York Family Court custody orders). Although I construe Plaintiff's complaint to raise substantive and procedural due process claims, the relief Plaintiff seeks ultimately amounts to a collateral attack on New York Family Court orders issued in an ongoing custody proceeding pursuant to New York Family Court Act Sections 1027 and 1028. Therefore, I find that Plaintiff's case falls squarely within the class of cases in which *Younger* abstention is warranted.

Although Plaintiff argues that *Younger* abstention is inapplicable in this case due to the "bad faith" exception, (*see* Doc. 51 at 14, 16), for a federal plaintiff to invoke the bad faith exception "the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (internal quotation marks omitted). Indeed, "[a] state proceeding that is legitimate in its purposes, but unconstitutional in its execution—even when the violations of constitutional rights are egregious—will not warrant the application of the bad faith exception." *Id.* Even construing Plaintiff's allegations liberally, the contention that Defendant instituted these child custody proceedings in bad faith is meritless. Accordingly, I abstain from exercising jurisdiction in this case pursuant to *Younger*.

### B. *Liability Under 42 U.S.C. § 1983*

Notwithstanding my decision to abstain under the *Younger* doctrine, I will proceed in the alternative to examine the sufficiency of Plaintiff's constitutional claims, which I construe as articulating substantive and procedural due process claims against the City. For the reasons

stated below, even if I were to exercise jurisdiction over Plaintiff's case, her Amended

Complaint fails to adequately plead liability under 42 U.S.C. § 1983.[2]

Under the standards of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a

municipality like the City can be held liable under Section 1983 if the deprivation of the

plaintiff's rights under federal law were caused by a governmental custom, policy, or usage of

the municipality. *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). Because

Plaintiff's core allegation is that ACS employees failed to abide by "procedures required [by]

law," (Doc 51 at 11), and "didn't obey the general procedures of [ACS] rules," (*id.* at 21), I

construe Plaintiff's Amended Complaint and declaration to raise a "failure to train" theory of

*Monell* liability.

As the Supreme Court has said, "[a] municipality's culpability for a deprivation of rights

is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S.

51, 61 (2011). Still, a plaintiff may prevail on such a claim where a municipality has acted with

deliberate indifference. A municipality is deliberately indifferent if a policymaking official "was

aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate

action to prevent or sanction violations of constitutional rights." *Jones v. Town of E. Haven*, 691

F.3d 72, 81 (2d Cir. 2012); *see also Wray v. City of N.Y.*, 490 F.3d 189, 196 (2d Cir. 2007)

(defining deliberate indifference as a "conscious disregard of the risk that poorly-trained

employees will cause deprivations of clearly established constitutional rights").

Here, the deficiencies in Plaintiff's Amended Complaint and declaration are two-fold.

First, Plaintiff states in conclusory fashion that the alleged violations of ACS policies and

---

[2] To the extent Plaintiff's complaint can be construed as raising constitutional claims on behalf of her son, (*see* Doc. 18 at 2, 5), Plaintiff's pro se status renders such claims improper. *See Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child.").

procedures amounted to violations of her federal rights.  (*See, e.g.*, Doc. 51 at ¶ 53 ("my case

actually ha[d] no investigation as the law required"), ¶ 61 ("ACS didn't have any documents to

lock [up] my son"), ¶ 71(stating that ACS acted "without any legal documents and procedures").)

Plaintiff fails to allege what specific policies and procedures ACS allegedly violated, and how

those alleged violations amounted to a violation of her federal rights.  Second, even if Plaintiff's

allegations sufficiently articulated the policies and procedures and how the violation of those

policies and procedures violated federal law, Plaintiff does not allege facts demonstrating ACS's

deliberate indifference.  Instead, Plaintiff argues that "it is the agency workers' duty to make sure

their working procedure[s] obey the law," and that municipal liability attaches when an agency

"cause[s] harm during the unlawful working process."  (Doc. 51 at 21.)  Such an argument is

facially insufficient to support liability under *Monell*; therefore, the Amended Complaint must be

dismissed.

## V.  **Conclusion**

For the reasons stated above, Defendant's motion to dismiss is GRANTED.  The Clerk of

Court is respectfully directed to terminate all open motions, to close this case, and to mail a copy

of this order to Plaintiff.

SO ORDERED.

Dated: November 8, 2019
     New York, New York

Vernon S. Broderick
United States District Judge